UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROBERT MULLIGAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 1:19-cv-01834-TWP-MPB |
| | ) |
| THE BOARD OF TRUSTEES OF | ) |
| INDIANA UNIVERSITY, | ) |
| KATHRYN CRUZ-URIBE, in her | ) |
| official and individual capacities and, | ) |
| MICHELLE MALOTT, in her official | ) |
| and individual capacities. | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' COMBINED RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT OF
DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendants the Board of

Trustees of Indiana University (the "University"), Kathryn Cruz-Uribe, and Michelle Malott

(collectively, the "Defendants") submit the following combined response to plaintiff Robert

Mulligan's Motion for Summary Judgment [Dkt. No. 39] and memorandum in support of their

cross-motion for summary judgment as to all claims asserted by plaintiff Robert Mulligan in this

lawsuit.

## I.      INTRODUCTION

*"[D]eans do serve at the pleasure of the EVCAA."* -Dr. Mulligan [Ex. 1, Mulligan Dep.

44:5-8; Ex. 2, September 21, 2017 Mulligan Email.]

"This letter does not constitute a contract. It is for information only." [Ex. 1, Mulligan

Dep., 8:22-25, 9:1; Ex. 5, July 29, 2017 Salary Letter.]

1

This entire case rests on one issue—whether Dr. Mulligan served as dean at the pleasure of the University as an at-will employee or whether he had a contractual right to serve as dean through the end of the 2017-18 fiscal year.

Although Dr. Mulligan himself recognized he served as Dean of the School of Business and Economics ("SoBE") at Indiana University East ("IUE") at the pleasure of Executive Vice Chancellor of Academic Affairs Dr. Michelle Malott [Ex. 1, Mulligan Dep. 44:5-8; Ex. 2, September 21, 2017 Mulligan Email], and that his 2017 Salary Letter expressly stated it did not constitute a contract, he nevertheless now claims the Defendants both committed a breach of contract by removing him as dean and violated his due process rights [Dkt. No. 1 ¶ 1]. In fact, the University and Dr. Malott had every right to remove Dr. Mulligan as dean for any reason—because he served at the pleasure of the University—as all deans do.

Although Dr. Malott removed Dr. Mulligan only from his administrative position as dean (after seven faculty members complained about his leadership skills and the negative culture that had festered in the SoBE under his leadership) Dr. Mulligan remains to this day a tenured Full Professor of Economics at IUE. Because he served as dean at her pleasure and at the pleasure of IUE, it was within Dr. Malott's authority to remove Dr. Mulligan at any time for any reason (or no reason at all).

Dr. Mulligan brings a breach of contract claim arising out of his removal as dean, arguing that he is entitled to continue to receive supplemental pay for an administrative post he no longer holds and for services he stopped performing due to his ineffectiveness in that role. However, the University did not consent to suit in this Court on the breach of contract claim and therefore has immunity under the Eleventh Amendment. Even without immunity, Dr. Mulligan's claim against the University fails because the original appointment letter does not state a definite period of

employment; thus, it is not a contract, and Dr. Mulligan's breach of contract claim must fail. Additionally, his subsequent re-appointment letter was even clearer and explicitly stated it was not a contract.

Dr. Mulligan also claims that the University could not remove him as dean without affording him due process. Dr. Mulligan is mistaken on both the law and the facts. As explicitly contemplated in his original appointment letter and, as admitted by Dr. Mulligan, he served at the pleasure of Dr. Malott in his position as dean.[1] In other words, Dr. Mulligan's administrative appointment as dean was an employment at will, and "an employee at will has no property interest in further employment." *Moulton v. Vigo Cnty.*, 150 F.3d 801, 804 (7th Cir. 1998) (citing *Ind. Alcoholic Beverage Comm'n v. Gault,* 405 N.E.2d 585, 589 (Ind. App. 1980) ("An employee at will is not entitled to the procedural protections . . . attached to a property interest.")).

The undisputed evidence shows that none of Dr. Mulligan claims can withstand Defendants' motion for summary judgment. Accordingly, the Court should enter summary judgment on all his claims in favor of Defendants.

## II.    STATEMENT OF MATERIAL FACTS IN DISPUTE

Defendants disagree with Dr. Mulligan's characterization of the following material facts and legal conclusions as unsupported by and contrary to any evidence:

1.      Dr. Mulligan states that "he was on a 12-month contract instead of a 10-month contract, [and his] actual salary as dean was $40,833.33." [Dkt. No. 40.] Dr. Mulligan further argues the July 29, 2017 "continuation letter" renewed and modified his original employment contract, extending his deanship to the end of the 2017-18 fiscal year.

---

[1]  Dr. Mulligan would like this Court to conveniently ignore his admission as he fails whatsoever to address it in his memorandum.

**Defendants' Response:** First, Dr. Mulligan's statement that he has an employment contract assumes he had a contract and is really just a legal conclusion unsupported by and contrary to any evidence. Second, Dr. Mulligan is mistaken. In fact, there was no original employment contract for dean. Dr. Mulligan's Original Appointment Letter explicitly stated that "[s]hould at some point in the future [he] no longer serve in the position of dean and return to a faculty position, [his] salary would be prorated to a standard ten (10) month faculty appointment." [Ex. 1, Mulligan Dep., 16:2-7; Ex. 3, Original Appointment Letter.] This language made it clear that his removal as dean could occur at any time.

Third, the July 29, 2017 Salary Letter certainly was not intended to and did not renew or modify an employment contract for his position of dean. Instead, it merely provided Dr. Mulligan with notice of an increase in his salary. A salary increase stated in annual terms is not enough to create a contractual employment term. *See Bee Window, Inc. v. Turman*, 716 N.E.2d 498, 501 (Ind. Ct. App. 1999) ("Stating compensation and other benefits in annual terms is both common and convenient, but does not necessarily mean that the employment is for a definite period of one year."). Finally, the 2017 Salary Letter included the explicit disclaimer that "[t]his letter does not constitute a contract. It is for information only." [Ex. 1, Mulligan Dep., 8:22-25, 9:1; Ex. 5, July 29, 2017 Salary Letter.]

Because there was no employment contract for a definite term for Dr. Mulligan's appointment as dean, there was no breach of contract. Without an employment contract, Dr. Mulligan did not have a property right in his continued employment as dean, and thus, there can be no due process violation.

2.    Dr. Mulligan also states that "Malott never gave a reason for [his] removal," and that he "received no negative feedback from Dr. Malott whatsoever prior to his removal as dean."

4

**Defendants' Response:** This is inaccurate. Rather, Dr. Malott met with Dr. Mulligan several times in Fall 2017 to discuss his performance and the complaints about his leadership. [*See* Ex. 4, Malott Dep., 44:8-25, 47:17-25, 48:1-15, 49:13-25, 50:1-2 (explaining that she focused their meetings on how Dr. Mulligan could fix the culture and issues in the SoBE going forward), 64:3-20 (explaining that she spoke with Dr. Mulligan about Dr. Savoy's complaint); Ex. 1, Mulligan Dep., 24:10-14 (admitting that "[Dr. Malott] intimated to me that there were concerns"), 25:1-9 ("I got the impression that everybody in the school is complaining about me"), 25:25, 26:1-4 ("[Dr. Malott] called me to her office to discuss . . . what's going on in the college"), 27:12-22 ("I had the impression there was an investigation. I participated in the investigation, I gave information.")].

3.      Dr. Mulligan states that "Malott testified that Tim Scales and other faculty members reported that Mulligan discouraged faculty from talking with the chancellors; however, she did not bring these concerns to Mulligan until she sent him the addendum to his 2017 performance evaluation – several months after she made the decision to remove him from the dean position."

**Defendants' Response:** This is inaccurate. As explained in detail above, Dr. Malott discussed these complaints with Dr. Mulligan prior to his removal as dean and around the time he participated in the Title IX investigation. [*See* Ex. 4, Malott Dep., 44:8-25, 47:17-25, 48:1-15, 49:13-25, 50:1-2, 64:3-20; Ex. 1, Mulligan Dep., 24:10-14, 25:1-9, 25:25, 26:1-4, 27:12-22].

4.      Dr. Mulligan states that "[Dr. Malott] later attached an addendum to the 2017 evaluation with additional comments."

**Defendants' Response:** This is inaccurate. Dr. Malott completed the addendum to Dr. Mulligan's 2017 evaluation at the same time as the rest of the evaluation. [Ex. 4, Mulligan Dep., 95:8-15.]

III.     **STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**[2]

A.      **Dr. Mulligan's Appointment at the University**

Dr. Mulligan began his appointment at the University on July 1, 2016 as a tenured Full Professor of Economics and dean of the SoBE at IUE. [Ex. 1, Mulligan Dep., 14:22-25, 15:1-3; Ex. 3, Original Appointment Letter.] For his tenured faculty position, the letter stated that his 12-month base salary for the 2016-17 fiscal year was $119,000.00. [Ex. 1, Mulligan Dep., 15:14-25, 16:1; Ex. 3, Original Appointment Letter; Ex. 4, Malott Dep., 25:3-8 (explaining that the University follows a fiscal year of July 1st to June 30th).] The University also paid him an additional $21,000.00 administrative supplement to serve as dean. [Ex. 1, Mulligan Dep., 6:8-25, 7:1-2; Ex. 3, Original Appointment Letter.] Dr. Mulligan's original appointment letter explicitly stated that "[s]hould at some point in the future [he] no longer serve in the position of dean and return to a faculty position, [his] salary would be prorated to a standard ten (10) month faculty appointment." [Ex. 1, Mulligan Dep., 16:2-7; Ex. 3, Original Appointment Letter.]

As dean, Dr. Mulligan "serve[d] at the pleasure of the EVCAA [Executive Vice Chancellor of Academic Affairs]" Dr. Michelle Malott. [Ex. 2, September 21, 2017 Mulligan Email; *see also* Ex. 1, Mulligan Dep. 44:5-8; Ex. 4, Malott Dep. 106:7-10.] Dr. Mulligan admits that Dr. Malott was the "sole judge" of his performance. [Ex. 1, Mulligan Dep. 49:11-19.]

On July 29, 2017, the University provided Dr. Mulligan a letter memorializing the increase in his salary to $142,800 for the 2017-18 academic year. [Ex. 5, July 29, 2017 Salary Letter; *see also* Ex. 1, Mulligan Dep., 7:13-21.]  The letter included the explicit disclaimer that "[t]his letter

---

[2]   The following facts are supported by appropriate citations to depositions, deposition exhibits, and other admissible evidence as to which Defendants contend there are no genuine issues of material fact. The facts are viewed in the light most favorable for Dr. Mulligan as required by Fed. R. Civ. P. 56.

does not constitute a contract. It is for information only." [Ex. 1, Mulligan Dep., 8:22-25, 9:1; Ex. 5, July 29, 2017 Salary Letter.]

**B.      Dr. Mulligan's Performance as Dean**

As dean, Dr. Mulligan had administrative responsibility for all aspects of the SoBE, including, but not limited to, faculty recruitment, development, and evaluation, program improvement, retention, and success, and other matters related to the continued well-being of the school and its faculty, staff, and students. [Ex. 4, Malott Dep. 100:21-25, 101:1-6; Ex. 3, Original Appointment Letter.] Dr. Mulligan was also responsible for performing other duties as assigned by his direct supervisor, Dr. Malott, and/or the Chancellor Dr. Kathryn Cruz-Uribe. [Ex. 3, Original Appointment Letter; Ex. 4, Malott Dep. 14:17-25, 15:1-6.]

As EVCAA, Dr. Malott oversees all the units that provide academic instruction [Ex. 4, Malott Dep. 12:18-25, 13:1-5], and it is her responsibility to ensure the overall success and health of the academic operations of IUE [*Id.* at 86:8-22]. In her role, in consultation with Chancellor Cruz-Uribe, Dr. Malott has the authority to hire, fire, and discipline employees who report to her. [*Id.* at 15:16-24, 16:10-21.] Yet, Chancellor Cruz-Uribe still makes the ultimate decision on employment matters if she chooses. [*Id.* at16:17-21.]

Throughout his appointment as dean, Dr. Malott and Dr. Mulligan routinely met to discuss Dr. Mulligan's performance and "issues related to what was going on in the college." [Ex. 1, Mulligan Dep. 23:18-25, 24:1-25.] Between Spring 2017 and Fall 2017, seven faculty members in the SoBE complained about Dr. Mulligan's leadership. [Ex. 4, Malott Dep. 31:16-25, 32:1-25, 33:1-25, 34:20-25, 35:1-12; Ex. 6, IUE's Office of Affirmative Action Report.]

One faculty member, April Savoy, complained that Dr. Mulligan was discriminating against her because of her recent pregnancy. Then, following a confrontation between a female

and male faculty member at a general faculty meeting in August 2017, three faculty members in the SoBE filed complaints with the IUE's Office of Affirmative Action, the Office of Human Resources, Dr. Malott, and Chancellor Cruz-Uribe regarding Dr. Mulligan's leadership as dean. [*See* Ex. 6, IUE's Office of Affirmative Action Report; Ex. 1, Mulligan Dep. 23:1-15.] Based on those complaints, the IUE's Office of Affirmative Action opened two Title IX investigations related to Dr. Mulligan's leadership—an investigation into Dr. Savoy's complaint that Dr. Mulligan was discriminating against her because of her recent pregnancy [Ex. 4, Malott Dep. 39:6-23, 63:10-16] and an investigation into a hostile work environment claim that stemmed from the August 2017 faculty meeting [*Id.* at 63:17-20; Ex. 6, IUE's Office of Affirmative Action Report.].

Pursuant to the applicable procedures,[3] Tracy Amyx, Director of Affirmative Action, EEOC Officer & Deputy Title IX Coordinator, and Evelyn Gordon, Director of Human Resources, conducted interviews with six faculty members and Dr. Mulligan about the August 2017 faculty meeting. [Ex. 6, IUE's Office of Affirmative Action Report.] Although Dr. Malott participated in the investigation, the Office of Affirmative Action and Human Resources are responsible for handling complaints of discrimination, not Dr. Malott or Chancellor Cruz-Uribe. [Ex. 4, Malott Dep. 47:13-25, 48:1-2, 65:23-25 (explaining that discrimination complaints are handled by the Office of Affirmative Action and Human Resources)].

The interviewed faculty members expressed concerns about Dr. Mulligan's "lack of leadership/professionalism," "lack of collaboration with faculty," "lack of communication," and

---

[3] IU Northwest Office of Affirmative Action & Employment Practices Complaint Procedure Guidelines: Discrimination and Harassment [Ex. 15, Affirmative Action Policy; Ex. 16, Email from Sharon Calhoon (explaining that IUE could use the IU Northwest procedures to investigate a complaint of discrimination because the procedures are the same across the University campuses); Ex. 4, Malott Dep. 62:6-22 (explaining that IUE has been working on updating its own policy but the procedures are the same across the University campuses).]

8

"possible implicit bias towards women." [Ex. 6, IUE's Office of Affirmative Action Report.] Two male faculty members also complained about the environment of the school and felt that the female faculty in the school were not being treated well. [Ex. 4, Malott Dep. 40:17-24.]

Additionally, in Fall 2017, three faculty on the search committee for Dean of the School of Humanities and Social Sciences, which Dr. Mulligan was chairing, complained about Dr. Mulligan's leadership skills. [*Id.* at 54:1-25, 55:1-2.] Specifically, they complained about Dr. Mulligan's lack of communication, that they were doing his work for him, and that his lack of leadership as Chair would impact the success of the search. [*Id.*]

### C.   The University's Decision to Remove Dr. Mulligan as Dean

In August 2017, Dr. Malott communicated with Dr. Mulligan about the complaints and explained that he would need to participate in a Title IX investigation. [*Id.* at 44:8-25, 47:17-25, 48:1-15.] Specifically, Dr. Malott and Dr. Mulligan discussed Dr. Savoy's complaint [*Id.* at 44:8-25, 45:1-6, 64:3-20 (explaining that she spoke with Dr. Mulligan about Dr. Savoy's complaint and the need to change her teaching schedule and he agreed to make the change).] Additionally, in September 2017 they met in person at least twice to discuss the faculty complaints about his leadership and his unsatisfactory performance as dean. [*Id.* at 51:19-25, 52:1-25.] Dr. Malott focused their meetings on how Dr. Mulligan could fix the culture and issues in the SoBE going forward. [*Id.* at 49:13-25, 50:1-2.]

Later during the Fall 2017 semester, when it became apparent no positive change was forthcoming, Dr. Malott decided to remove Dr. Mulligan as dean because the SoBE needed to move forward with new leadership. [*Id.* at 70:17-22 (referring to Dr. Mulligan stating that "the leadership was lacking"), 99:5-22 (explaining that she first started thinking about removing Dr. Mulligan as dean late that fall semester).] Although there is no policy or procedure for removing

deans at Indiana University including its IUE campus [Ex. 7, Malott Declaration] because such administrators serve in an at-will capacity, Dr. Malott met with Chancellor Cruz-Uribe before notifying Dr. Mulligan of his removal [Ex. 4, Malott Dep. 80:18-25, 81:1-23]. After Dr. Malott explained her reasoning, Chancellor Cruz-Uribe agreed and supported the removal. [*Id.*]

Dr. Malott met with Dr. Mulligan twice in December 2017. [*Id.* at 30:20-25, 31:1-15 (explaining that she could not recall the exact dates but "[they] had two meetings in December").] During the first meeting, she discussed Dr. Mulligan returning to the faculty full time and being removed as dean. [*Id.*] During the second meeting on December 14, 2017 [Ex. 1, Mulligan Dep. 21:2-4 (testifying that he met with Dr. Malott on December 14, 2017)], Dr. Malott addressed the complaints and notified Dr. Mulligan that she was removing him as dean [*Id.* at 17:19-22, 21:2-25, 22:1].

On January 3, 2018, Dr. Mulligan emailed the members of the Business Advisory Council stating that he and Dr. Malott had decided that he would be stepping down as dean to work on the Association to Advance Collegiate Schools of Business accreditation process full time. [Ex. 1, Mulligan Dep. 54:12-25; Ex. 8, January 3, 2018 Mulligan Email.] Although irrelevant to any actionable claim, Dr. Mulligan has no evidence or information that Chancellor Cruz-Uribe or Dr. Malott ever publicly disclosed that he was removed as dean. [Ex. 1, Mulligan Dep. 54:12-25, 55:15-22 (testifying that until the filing of this lawsuit, it looked like he had stepped down as dean and that he has no evidence or information that Chancellor Cruz-Uribe or Dr. Malott ever publicly disclosed that he was removed as dean).] On February 11, 2018, Dr. Mulligan's appointment as dean officially ended but, to this day, he remains a tenured Full Professor of Economics in the SoBE at IUE. [*Id.* at 17:16-18; Ex. 9, February 9, 2018 Malott Removal Letter.] Pursuant to the Faculty Members Holding Administrative Positions, ACA-08 policy [Ex. 10, ACA-08 Policy ("At

27358983.1

such time as a faculty member . . . is removed from the administrative position, the faculty member's salary shall return to the faculty component of the salary and the faculty member shall no longer be entitled to the administrative component."], beginning February 12, 2018, Dr. Mulligan's salary was converted to a standard 10-month amount of $101,150, which reflected the removal of the administrative supplement he was given as dean [Ex. 9, February 9, 2018 Malott Removal Letter].

In May 2018, Dr. Malott drafted Dr. Mulligan's performance evaluation for the review period of January 2017 through December 2017. [Ex. 4, Malott Dep. 73:2-14 (explaining that "annual evaluations are done on a calendar basis"), 94:18-23.] Although Dr. Malott rated his overall performance as "Proficient," she attached an addendum outlining the specific reasons Dr. Mulligan's overall performance was "Inconsistent." [Ex. 11, Mulligan 2017 Annual Review; *see also* Ex. 4, Malott Dep. 91:2-25, 92:1-9 (explaining that she rated Dr. Mulligan as "Proficient" overall so he could still be eligible for a merit pay increase with respect to his faculty, as distinct from his administrative, duties).]

On July 30, 2018, Dr. Mulligan filed a complaint over his removal as dean with the IUE Faculty Board of Review ("FBR"). [Ex. 12, July 30, 2018 Dr. Mulligan complaint to the Indiana University East Faculty Board of Review.] Under the IUE Faculty Senate Policies and Procedures for the Faculty Board of Review at IUE, the FBR "has the responsibility to review cases involving actions of dismissal, reappointment, tenure, and other grievances concerning the nature and conditions of work, including academic freedom, promotion, salary, and reviews of Faculty." [Ex. 13, FBR Policy.] The FBR does not have the authority to review the removal of administrative positions because the policy only covers "Faculty" positions. [Ex. 7, Malott Declaration; Ex. 13, FBR Policy (explaining that even if the Board were to review the action, it cannot "override any

27358983.1

administrative decisions").] Thus, on September 5, 2018, faculty member James Orman Barbre informed Dr. Mulligan that the FBR had met and determined that, based on the policy, Dr. Mulligan's complaint was dismissed because the desired remedy was impossible to achieve. [Ex. 14, Sept. 5, 2018 FBR Email.]

### D.    Dr. Mulligan's Lawsuit against Defendants

Dr. Mulligan filed this lawsuit on May 6, 2019. [Dkt. No. 1.] His complaint includes two claims—a violation of what he asserts are constitutionally protected due process interests pursuant to 42 U.S.C. § 1983 by defendants Chancellor Cruz-Uribe and Dr. Malott, and a breach of contract by the University. [*See id.*]

## IV.    LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## V.    ARGUMENT

### A.    Dr. Mulligan's Claims are Barred by the Eleventh Amendment.

#### 1.    *The University has sovereign immunity.*[4]

---

[4]  It is unclear whether Dr. Mulligan is bringing his due process claim against the University or just against Chancellor Cruz-Uribe and Dr. Malott. Plaintiff's Complaint states "Count I Violations of Fourteenth Amendment Procedural Due Process Rights by Defendants Cruz-Uribe & Malott,"

It is black-letter law that states and their agencies cannot be sued in federal court unless they unequivocally consent to suit or Congress unequivocally abrogates their Eleventh Amendment immunity pursuant to a valid exercise of power. *See Gomez v. Ill. State Bd. of Educ.*, 811 F.2d 1030, 1036 (7th Cir. 1987). The Seventh Circuit has held that Section 1983 claims against state agencies are barred by the Eleventh Amendment because it was not abrogated by Congress in its enactment of this federal statute. *See Rucker v. Higher Educ. Aids Bd.,* 669 F.2d 1179, 1184 (7th Cir. 1982). The University is an "instrumentality" or "arm" of the State of Indiana for purposes of the Eleventh Amendment. *Shannon v. Bepko*, 684 F. Supp. 1465, 1470 (S.D. Ind. 1988). In addition, the University has not waived immunity or otherwise consented to this lawsuit. *See* Ind. Code § 34-13-3-5(f); *Shannon*, 684 F. Supp. at 1470.

Accordingly, Dr. Mulligan's Section 1983 claim against the University is barred by the Eleventh Amendment. *See also Bissessur v. Ind. Univ. Bd. of Trs.*, No. 1:07-CV-1290, SEB-WTL, 2008 WL 4274451, *3 (S.D. Ind. Sept. 10, 2008) (dismissing Section 1983 claims against Indiana University due to Eleventh Amendment immunity).

Moreover, because the University did not consent to suit in this Court on Dr. Mulligan's state law breach-of-contract claim, it is also barred by the Eleventh Amendment. *See Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 547 (2002) (affirming dismissal of state law claims pursuant to Eleventh Amendment immunity); *Hays v. Bonfiglio*, No. 3:13-CV-197 PS, 2013 WL 1629159, *1 (N.D. Ind. Apr. 15, 2013) (declining to exercise jurisdiction over a state constitutional claim as a result of Eleventh Amendment immunity). Accordingly, Dr. Mulligan cannot pursue any of his claims against the University due to Eleventh Amendment sovereign immunity.

---

but Plaintiff continually refers to the collective "Defendants" throughout Count I. [Dkt. 1 at ¶¶ 26-29].

### 2. Defendants Chancellor Cruz-Uribe and Dr. Malott have sovereign immunity in their official capacities.

The University's immunity also extends to individuals "being sued in their 'official capacities.'" *Shannon*, 684 F. Supp. at 1473-74; *see also Zimmerman v. Bd. of Trs. of Ball State Univ.*, 940 F. Supp. 2d 875, 885 (S.D. Ind. 2013) (holding that Section 1983 claims for money damages against the defendants sued in their official capacities were barred by the Eleventh Amendment). One exception is that a plaintiff may sue individual state officials for "prospective injunctive relief to protect the plaintiff against any further or ongoing violation of his federal rights." *Bissessur*, 2008 WL 4274451, at *3.[5] Accordingly, Dr. Mulligan's claims against Chancellor Cruz-Uribe and Dr. Malott in their official capacities for any relief other than prospective injunctive relief are barred.

### 3. Defendants Chancellor Cruz-Uribe and Dr. Malott have sovereign immunity in their individual capacities.

Dr. Mulligan asserts in his complaint that Chancellor Cruz-Uribe and Dr. Malott acted in their individual capacities alleging that they interfered with his property and liberty interests by failing to afford him with due process. [Dkt. No. 1 ¶ 26.] Dr. Mulligan's claim, however, is not a "bona fide individual capacity suit." Rather, it is inherently an official capacity claim and is, accordingly, barred by the Eleventh Amendment. As this Court stated in *Wade v. Indiana University School of Med.*, claims against individual state employees are not bona fide individual capacity suits if: (1) the claims arise from the individuals' conduct in their official capacities as employees of an arm of the state, (2) the individuals would not be facing plaintiff's allegations if

---

[5]   This exception to the rule, however, extends only to the extent the plaintiff is seeking "prospective equitable relief" from individual defendants who are capable of providing such relief. *See Nicol v. Lavin*, No. 03 C 6688, 2004 WL 1881786, *5 (N.D. Ill. Aug. 13, 2004) (dismissing Section 1983 claim against an individual defendant who was incapable of reinstating the plaintiff).

they were not supervisors, and (3) their actions were undertaken in their official capacities as supervisors. No. 1:16-cv-02256-TWP-MJD, 2019 WL 3067519, *8, *8 n.1 (S.D. Ind. July 12, 2019); *see also Haynes v. Ind. Univ.*, 902 F.3d 724, 732 (7th Cir. 2018) (holding that a plaintiff cannot "seek monetary relief from state employees in their *individual* capacities *if* the suit 'demonstrably has the identical effect as a suit against the state'") (original emphasis; quoting *Luder v. Endicott*, 253 F.3d 1020, 1023-24 (7th Cir. 2001)); *Omosegbon v. Wells*, 335 F.3d 668, 673 (7th Cir. 2003) (holding that claims against the individual defendants were not bona fide individual capacity suits when the plaintiff sought damages for constitutional claims arising out of an employment relationship).

Here, Dr. Mulligan has not alleged a single claim against either Chancellor Cruz-Uribe or Dr. Malott for conduct taken by either of them individually as a person, separate and distinct from their roles as an administrator at IUE. Rather, Dr. Mulligan alleges that Chancellor Cruz-Uribe and Dr. Malott "failed to follow IU's policies and procedures" "dictating the course of action for demotions." [Dkt. No. 1 ¶ 18; *see, e.g.*, Ex. 1, Mulligan Dep. 4:17-25, 5:1-16, 43:9-20 ("There are policies which Dr. Malott and Dr. Cruz-Uribe failed to follow, for example, in preparing my annual evaluation and appending a bunch of extraneous, untruthful, and defamatory material to it, and not following the university's Title IX investigation policy . . ."]. The specific duties implicated in Dr. Mulligan's claim—to follow applicable rules and procedures and conduct annual evaluations— arise directly out of Chancellor Cruz-Uribe's and Dr. Malott's administrative roles at IUE.

Accordingly, because Dr. Mulligan has, in reality, asserted a claim against Chancellor Cruz-Uribe and Dr. Malott in their official capacities (as opposed to their individual capacities), all claims for money damages against them, as officials of the University, are barred by the Eleventh Amendment.

27358983.1

**4. *Defendants Dr. Cruz-Uribe and Dr. Malott are also protected by qualified immunity.***

"Qualified immunity is an affirmative defense to a Section 1983 constitutional tort claim against a government official who is being sued in his or her individual capacity." *Bissessur*, 2008 WL 4274451, at *3 (citing *Eversole v. Steele*, 59 F.3d 710, 717 (7th Cir. 1995)). The Court engages in a two-part inquiry to determine whether qualified immunity applies: (1) whether plaintiff asserted a violation of federal constitutional law; and (2) whether the constitutional standards implicated were clearly established at the time in question. *Eversole*, 59 F.3d at 717; *see Colburn v. Trs. of Ind. Univ.*, 739 F. Supp. 1268, 1299 (S.D. Ind. 1990) ("[P]ublic officials performing discretionary functions are protected against suits for money damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known."). "Although qualified immunity is often raised as a defense to a § 1983 action, it is the plaintiff who bears the burden of proof on the above two-part test." *Eversole*, 59 F.3d at 717 (citation omitted).

Here, there is no evidence that Dr. Cruz-Uribe and Dr. Malott engaged in conduct that violated a clearly established due process right of Dr. Mulligan. Rather, as explained in further detail below, each individual properly performed her role in Dr. Mulligan's removal as dean. More importantly, Dr. Mulligan has no property or liberty interest in an administrative position as dean, and Dr. Mulligan was provided notice and an opportunity to be heard before removal. As a result, the Defendants sued in their individual capacities are entitled to qualified immunity from Dr. Mulligan's due process claims for money damages. *See, e.g.*, *Bissessur*, 2008 WL 4274451, at *5 (shielding individual defendants from liability for money damages where "[t]heir conduct was in every respect rationally related to the performance of their discretionary functions").

16

27358983.1

**B.      Dr. Mulligan's Breach of Contract Claim Cannot Survive Summary Judgment.**

As explained in Section V. A. I. *supra*, because the University did not consent to be sued in this Court on Dr. Mulligan's state law breach of contract claim, that claim is barred by the Eleventh Amendment. *See Raygor*, 534 U.S. at 547 (affirming dismissal of state law claims pursuant to Eleventh Amendment immunity). However, even if not barred, the breach of contract claim fails as a matter of law.

### 1. *The Original Appointment Letter was not for a Definite Term.*

Dr. Mulligan argues that the Original Appointment Letter constituted an employment contract for a definite term as to both his tenured professorship and his deanship. Indiana recognizes two basis forms of employment: (1) employment for a definite or ascertainable term; and (2) employment-at-will. *Orr v. Westminster Vill. N.*, Inc., 689 N.E.2d 712, 717 (Ind. 1997). In Indiana, "the presumption of at-will employment is strong," and the Indiana Supreme Court is reluctant to adopt broad and ill-defined exceptions to the employment-at-will doctrine. *Moulton*, 150 F.3d at 805 (quoting *Orr*, 689 N.E.2d at 717). When no definite or ascertainable term of employment exists, an employee is considered an employee at will and may be terminated at any time, with or without cause. *Id.*

Dr. Mulligan's Original Appointment Letter was not an employment contract for a definite term because it fails to meet the necessary elements. Indiana requires an employment contract for a definite term to contain four elements in order to be valid and enforceable: 1) it must state the place of employment; 2) it must state the period of employment; 3) it must state the nature of the services the employee is to render; and 4) it must state the compensation the employee was to receive. *Butts v. Oce-USA, Inc.*, 9 F. Supp. 2d 1007, 1011 (S.D. Ind. 1998) (citing *Majd Pour v. Basic Am. Med., Inc.*, 512 N.E.2d 435, 439 (Ind. Ct. App. 1987)).

27358983.1

In this case, the Original Appointment Letter fails to state a definite period of employment. Dr. Mulligan argues the definite period of employment is the fiscal year 2016-17. However, "[s]tating compensation and other benefits in annual terms is both common and convenient, but does not necessarily mean that the employment is for a definite period of one year." *Bee Window, Inc.*, 716 N.E.2d at 501.

In fact, neither Dr. Mulligan's tenured professorship nor his deanship was for a one-year term. As Dr. Mulligan knew, his tenured professorship was not for one year, but rather was permanent unless he was removed for cause [Ex. 1, Mulligan Dep. 41:23-25]. Dr. Mulligan also knew that he served as dean, not for one year, but rather at the pleasure of the University [Ex. 1, Mulligan Dep. 44:5-8; Ex. 2, September 21, 2017 Mulligan Email], which he also knew meant that at any time he could be "dismissed for no reason" [Ex. 1, Mulligan Dep. 45:5-8]. Thus, it is clear that the Original Appointment Letter's reference to the 2016-17 fiscal year was for the convenience of stating Dr. Mulligan's rate of pay in terms of an annual salary and not an employment contract for a one-year period.

### 2. The Original Appointment Letter for Dr. Mulligan's Deanship was not for a Definite Term.

Even assuming for the sake of argument that the Original Appointment Letter was for a definite term of the 2016-17 fiscal year for Dr. Mulligan's tenured professorship, with respect to his duties as dean, the letter is explicitly open-ended in time and thus lacks an essential element of an employment contract for a definite term and to that extent is instead an at-will position. In the Original Appointment Letter, Dr. Cruz-Uribe wrote: "Should at some point in the future you no longer serve in the position of dean and return to a faculty position, your salary would be prorated to a standard ten (10) month faculty appointment." This provision would be rendered meaningless

if Dr. Mulligan's term as dean was for one year. Instead, as Dr. Mulligan knew, his employment as dean was at the pleasure of the University and thus was at will.

### 3.   *The July 29, 2017 Salary Letter did not Constitute a Contract.*

On July 29, 2017, the University provided Dr. Mulligan a letter memorializing an increase in Dr. Mulligan's salary to $142,800 for the 2017-18 academic year. [Ex. 1, Mulligan Dep., 7: 13-21; Ex. 5, July 29, 2017 Salary Letter.] If somehow the Original Appointment Letter was unclear as to whether it provided Dr. Mulligan a definite term of employment, the 2017 Salary Letter eliminated any doubt by including the explicit disclaimer that "[t]his letter does not constitute a contract. It is for information only." [Ex. 1, Mulligan Dep., 8:22-25, 9:1; Ex. 5, July 29, 2017 Salary Letter.] Yet Dr. Mulligan argues the 2017 Salary Letter renewed and modified what he erroneously regards as his original one-year employment contract as dean for another year through the 2017-18 fiscal year. Again, however, "[s]alaries are typically measured in annual terms and doing so does not eliminate an employee's at-will status." *Butts*, 9 F. Supp. 2d at 1011. The 2017 Salary Letter did nothing more than provide Dr. Mulligan notice of his pay raise set forth as an annual salary for the 2017-18 fiscal year. Any other interpretation would render meaningless the unambiguous statement that the letter did not constitute a contract and was for information only.

### 4.   *Dr. Mulligan Served as Dean at the Pleasure of the University.*

Dr. Mulligan admits he "served at the pleasure" of the University. [Ex. 1, Mulligan Dep. 44:5-8; Ex. 2, September 21, 2017 Mulligan Email]. Dr. Malott agrees. [Ex. 4, Malott Dep. 106:5-10; Ex. 7, Malott Declaration.] Serving at the pleasure of the University means Dr. Mulligan was an at-will employee and could be removed at any time for any or no reason. *See, e.g., Hilburt v. Town of Markleville*, 649 N.E.2d 1036, 1039 (Ind. Ct. App. 1995) (A town "marshal serves at the pleasure of the town legislative body. This language indicates that the marshal is an employee at

will and further indicates that the marshal may be terminated or suspended at the legislative body's discretion.")

The Original Appointment Letter (for the fiscal year 2016-17) clearly distinguished Dr. Mulligan's salary supplement as dean from his faculty salary and explicitly stated his overall salary would be reduced proportionally when he no longer served as dean. [*See* Section III. A., paragraph one, *supra.*] Finally, the salary notification he received on July 29, 2017, for the 2017-18 fiscal year, explicitly stated "[t]his letter does not constitute a contract. It is for information only" – a fact Dr. Mulligan admits. Thus, Dr. Mulligan received the full benefit of any promise made by the University with respect to his administrative position as dean, and therefore his claim of breach of contract fails as a matter of law.

**5. *University Policies Cannot Provide Dr. Mulligan Contractual Rights.***

Dr. Mulligan cannot claim that any policies of the University (previously referred to as the Academic Handbook, etc.) give him any contractual rights as these arguments have been repeatedly rejected by federal courts. *See generally Packer v. Trs. of Ind. Univ. Sch. of Med.*, 73 F. Supp. 3d 1030, 1040 (S.D. Ind. 2014) (holding that because the "Academic Handbook explicitly disclaims any creation of a contract," stating in its preamble that "it does not create a contract and does not create any legal rights", "[plaintiff] cannot rely upon these policies as a basis for her breach of contract claim."); *Lim v. Trs. of Ind. Univ.*, No. IP-99-0419-C-M/S, 2001 WL 1912634, *19 (S.D. Ind. Dec. 4, 2001) ("This disclaimer makes it clear that the University never intended the Handbook to form part of its contract[.]").

**C.      Dr. Mulligan's Due Process Claim Fails.**

Even if Dr. Mulligan's due process claim is not barred by Eleventh Amendment and/or qualified immunity, his claim still fails as a matter of law.

27358983.1

1.   *Legal Standard for Procedural Due Process Claims.*

"An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). "Due process is a flexible concept that 'calls for such procedural protections as the particular situation demands.'" *Pugel v. Bd. of Trs. of Univ. of Ill.*, 378 F.3d 659, 663 (7th Cir. 2004) (citations omitted).

2.   *Dr. Mulligan does not have a protectable property interest in continued employment as Dean***.**

The first part of a due process analysis involves a determination of "whether the plaintiff was deprived of a protected interest," such as a property interest. *Id.* at 662. "The Fourteenth Amendment's procedural protection of property is a safeguard of the security interests that a person has already acquired in specific benefits. These interests—property interests—may take many forms." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576 (1972). Employees have a property interest only when they have a legitimate claim of entitlement, usually arising by statute or contract. *Lalvani v. Cook Cnty.,* 269 F.3d 785, 791 (7th Cir. 2001). Public employees who serve only "at will" or at the pleasure of their employers may have a desire in continued employment but they do not have a property interest. *Id.*

In his complaint, Dr. Mulligan alleges that Chancellor Cruz-Uribe and Dr. Malott failed to provide him with adequate notice of his removal as dean and did not provide him with the reason for removal. [Dkt. No. 1 ¶ 16.] Thus, Dr. Mulligan contends that he did not have an opportunity to present evidence or to be heard. [Dkt. No. 1 ¶ 17.] He also alleges that Chancellor Cruz-Uribe and Dr. Malott failed to follow the University's policies and procedures. [Dkt. No. 1 ¶ 18.]

As noted above, Dr. Mulligan was removed only from his administrative role as dean. He remains employed by the University as a tenured faculty member. [Ex. 1, Mulligan Dep., 17:16-18; Ex. 9, February 9, 2018 Malott Removal Letter.] As set forth above and explained in the Original Appointment Letter, [Ex. 3, Mulligan's Original Appointment Letter; Ex. 4, Malott Dep. 106:7-10] and by his own admission, deans serve at the pleasure of the University [Ex. 1, Mulligan Dep. 44:5-8; Ex. 2, September 21, 2017 Mulligan Email]. With respect to Dr. Mulligan's administrative role as dean,[6] he was an employee at will, and "an employee at will has no property interest in further employment." *Moulton*, 150 F.3d at 804 (citing *Ind. Alcoholic Beverage Comm'n,* 405 N.E.2d at 589 ("An employee at will is not entitled to the procedural protections . . . attached to a property interest.")). Thus, Dr. Mulligan's appointment as dean cannot form the basis for a due process claim as he does not have the requisite property interest in continued employment. *See also Knox v. Trs. of Ind. Univ.*, 160 F. Supp. 3d 1073, 1076 (N.D. Ind. 2016) ("Plaintiff did not have a protected property interest in his employment because he served at the will of the board of trustees of Indiana University . . . .").

### 3. *Dr. Mulligan does not have a protectable liberty interest in continued employment as Dean.*

Dr. Mulligan asserted in his complaint that Defendants interfered with his liberty interests by failing to afford him due process. However, he makes no such argument in his memorandum in support of his motion for summary judgment. To the extent Dr. Mulligan has not otherwise dispensed with his liberty claim, it nonetheless fails.

---

[6] Although not at issue in this case, the university does not concede as a general matter that any of its faculty are contract employees—as distinct from employees at will subject to elaborate internal procedures and protections—regardless of whether they also serve in an administrative capacity.  Here, the only issue is the nature of Dr. Mulligan's administrative appointment as dean and whether it confers any contractual or due process interests.  The Defendants maintain it does not.

A government employee's liberty interests are implicated where, in terminating the employee, the government "make[s] any charge against him that might seriously damage his standing and associations in the community" or "impose[s] on him a stigma or other disability that foreclose[s] his freedom to take advantage of other employment opportunities." *Roth*, 408 U.S. at 573. The Seventh Circuit has recognized that a liberty interest is impaired if the government injures the employee's "good name, reputation, honor or integrity, or imposes a stigma that effectively forecloses the employee's future employment opportunities." *Ratliff v. City of Milwaukee*, 795 F.2d 612, 625 (7th Cir. 1986) (internal citations and quotations omitted). However, absent proof that the government employer "disseminated the stigmatizing information in a manner which would reach future potential employers of the plaintiff or the community at large, [he] cannot show that the defendant['s] actions impinged on [his] liberty interest in pursuing [his] occupation." *Id.* at 627.

Here, Dr. Mulligan admitted that his removal as dean was never publicly disclosed by Defendants. [Ex. 1, Mulligan Dep. 54:12-25, 55:15-22 (testifying that until the filing of this lawsuit, it looked like he had stepped down as dean), *see also* Ex. 8, January 3, 2018 Mulligan Email (explaining that he and Dr. Malott had decided he would step down as dean to work on the accreditation process).] Dr. Mulligan even retained his employment as a tenured professor at IUE. [Ex. 1, Mulligan Dep., 17:16-18; Ex. 9, February 9, 2018 Malott Removal Letter.]

Further, to the extent that Dr. Mulligan is alleging that his 2017 annual evaluation constitutes public disclosure, his evaluation was not publicly disclosed by the University, but only given to Dr. Mulligan himself. [Ex. 4, Malott Dep. 95:8-25, 96:1-20.] His argument that he was given an overall performance rating of "Inconsistent" cannot form the basis of his liberty interest claim. *See Johnson v. Martin,* 943 F.2d 15, 17 (7th Cir. 1991) ("The plain fact is that the mere

existence of damaging information in Johnson's personnel file cannot give rise to a due process challenge."). Thus, because he cannot establish that he had a protectable liberty interest in his continued employment as dean, Dr. Mulligan's due process claim fails. *Franklin v. City of Evanston*, 384 F.3d 838, 845 (7th Cir. 2004) (holding that plaintiff did not have a protected liberty interest because he presented no evidence that the City publicly disseminated the reason for his termination).

### 4. Dr. Mulligan received all the process due to him.

Even if for the sake of argument only Dr. Mulligan were to establish that he has a protected property or liberty interest in the deanship, which he cannot, his claim still fails. The United States Supreme Court has held that "[t]he essential requirements of due process . . . are notice and an opportunity to respond." *Cleveland Bd. of Educ.*, 470 U.S. at 546. In the context of the termination of a university professor, the United States Supreme Court has held:

> [t]he essential requirements of due process . . . are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

*Id.* at 546 (citations omitted). The opportunity to be heard "need not be elaborate." *Id.* at 545. "To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Id.* at 546. "[A]s long as the process is reasonably transparent and fair and affords the subject an opportunity to respond . . . the ultimate issue focuses less on the particular process and more on the recognition of the institution's interest in assuring a proper educational environment." *Grant v. Trs. of Ind. Univ.*,

No. 1:13-cv-826-TWP-DML, 2016 WL 1222344, *11 (S.D. Ind. Mar. 28, 2016) (quoting *Hartman v. Keri*, 883 N.E.2d 774, 777-78 (Ind. 2008)).

Here, it is undisputed that Dr. Malott repeatedly informed Dr. Mulligan of the concerns about his performance and leadership and gave him an opportunity to respond prior to his removal. Dr. Malott met with Dr. Mulligan several times before his removal to discuss his performance and give him the opportunity to explain and respond to those deficiencies. [*See* Ex. 4, Malott Dep. 44:8-25, 47:17-25, 48:1-15 (explaining that she spoke to him in August 2017 in an email or phone call about the complaints and the investigation), 49:1-25, 50:1-2 (explaining that she met with him in person at least twice in September 2017 and focused their meetings on how Dr. Mulligan could fix the culture and issues in the SoBE), 17:19-22, 21:2-25, 22:1, 30:20-25, 31:1-15 (explaining that she met with him at least twice in December 2017 to discuss the complaints).] Despite Dr. Mulligan's bald statements that Dr. Malott did not inform him of the reasons he was being removed as dean [Ex. 1, Mulligan Dep. 21:25, 22:1-3], Dr. Mulligan admitted that Dr. Malott made him aware of the complaints against him and acknowledged participating in and providing information in response to a Title IX investigation [*See id.* at 24:10-14 ("[Dr. Malott] intimated to me that there were concerns"), 25:1-9 ("I got the impression that everybody in the school is complaining about me"), 25:25, 26:1-4 ("[Dr. Malott] called me to her office to discuss . . . what's going on in the college"), 27:12-22 ("I had the impression there was an investigation. I participated in the investigation, I gave information.")].

Accordingly, there is no question that Dr. Mulligan was afforded adequate due process prior to his removal as dean. *See Cleveland Bd. of Educ.*, 470 U.S. at 546 (1985) ("The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."); *see also Loudermill*

*v. Cleveland Bd. of Educ.*, 844 F.2d 304, 311 (6th Cir. 1988) (informal meeting between employee and supervisor satisfied requirements for pre-termination due process).

> **5.  *Dr. Mulligan has no federally protected right in University procedures, and therefore, any alleged deviation cannot form the basis of his due process claims.***

In his complaint, but tellingly not in his memorandum in support of his motion for summary judgment, Dr. Mulligan alleges that Chancellor Cruz-Uribe and Dr. Malott "failed to follow [the University's] policies and procedures" "dictating the course of action" for the removal of deans. [Dkt. No. 1 ¶ 18; Ex. 1, Mulligan Dep. 43:9-20.] Yet, there are no policies and procedures for removing a dean since deans and other administrators serve at the pleasure of senior university administrators. [Ex. 4, Malott Dep. 106:5-10; Ex. 7, Malott Declaration.] And despite alleging that such a policy exists, Dr. Mulligan has produced no such written policy, instead, testifying that the requirement that Dr. Malott "apply reasonable and objective criteria" to his removal is just "common sense." [Ex. 1, Mulligan Dep. 5:10-25, 6:1-7, 49:17-25, 50:1-9.] Rather, as Dr. Mulligan stated, deans "serve at the pleasure of the EVCAA," and Dr. Malott was the "sole judge" of his performance as dean. [*Id.* at 44:5-8, 49:17-19; Ex. 2, September 21, 2017 Mulligan Email.] Thus, if she wanted, Dr. Malott could "dismiss[] [Dr. Mulligan] for no reason." [Ex. 1, Mulligan Dep. 45:5-8.]

Since a removal policy does not exist, Dr. Mulligan attempts to fashion a due process violation by alleging that Chancellor Cruz-Uribe and Dr. Malott violated the annual evaluation process by retroactively evaluating him, failed to follow the FBR procedure to give him a hearing to review his dismissal, and failed to follow the University's Title IX investigation policy. [*Id.* at 43:9-20, 46:2-18.] First, as explained above, annual evaluations are conducted on a calendar year basis, so Dr. Malott properly evaluated Dr. Mulligan during the following spring semester. [Ex. 4,

26

Malott Dep. 73:2-14 (explaining that "annual evaluations are done on a calendar basis"), 94:18-23.] Second, under the FBR policy, the FBR only has the authority to review issues with faculty positions, not administrative positions. [Ex. 13, FBR Policy; Ex. 7, Malott Declaration.] Third, the Office of Affirmative Action and Human Resources conducted two investigations into the complaints and interviewed Dr. Mulligan for information. [Ex. 6, IUE's Office of Affirmative Action Report; Ex. 1, Mulligan Dep. 27:12-22 ("I had the impression there was an investigation. I participated in the investigation, I gave information.").] Finally, Chancellor Cruz-Uribe and Dr. Malott are not responsible for implementing the FBR policy or the Affirmative Action Policy. [Ex. 7, Malott Declaration; Ex. 4, Malott Dep. 47:13-25, 48:1-2, 65:23-25 (explaining that discrimination complaints are handled by the Office of Affirmative Action and Human Resources).]

There is no evidence that Chancellor Cruz-Uribe and Dr. Malott failed to follow any of the University's policies or procedures in the decision to remove Dr. Mulligan as dean. However, even if the Court finds they did not adhere to the University's policies, that alone would not support Dr. Mulligan's due process claim. To the extent any alleged deviations from policy form the basis for Dr. Mulligan's due process claim, such a claim fails because "a plaintiff does not have a federal constitutional right to state-mandated process." *Charleston v. Bd. of Trs. of Univ. of Ill. at Chi.*, 741 F.3d 769, 773 (7th Cir. 2013) ("It may have been unfair for the university not to follow its own procedures in [plaintiff's] case, but it was not unconstitutional."); *see Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012) ("the federal Constitution's due process clause does not protect an interest in other process") (citation omitted).

As a result, even if only for the sake of argument the court were to find that the University or its officials failed to follow university policy, deviations from policy cannot form the basis of a

27358983.1

constitutionally protected due process claim. *See Osteen v. Henley*, 13 F.3d 221, 225 (7th Cir. 1993) ("As we tirelessly but unavailingly remind counsel in this court, a violation of state law (for purposes of this case the student judicial code may be treated as state law) *is not a denial of due process*, even if the state law confers a procedural right.") (emphasis added); *see also Pugel*, 378 F.3d at 666 (stating that a violation of the university's policies during a hearing "is not necessarily a violation of due process"); *Hill v. Trs. of Ind. Univ.*, 537 F.2d 248, 250-52 (7th Cir. 1976) (stating that a student received all the process he was due under the university's procedures, even though the university failed to comply in full with its own procedures); *Grant*, 2016 WL 1222344, at *10 (dismissing the "argument that [plaintiff] was denied federally protected due process rights because IUSB did not follow the procedures within the IU Handbook" because "the Seventh Circuit has repeatedly held that a state-created university process does not confer federal due process rights") (citations omitted). Accordingly, Dr. Mulligan's due process claim fails.

## VI.   CONCLUSION

For the foregoing reasons, Defendants respectfully move the Court to enter an order (1) denying Plaintiff's Motion for Summary Judgment; and (2) granting Defendants' Cross-Motion for Summary Judgment.

Respectfully submitted,

*James R. A. Dawson*
Michael C. Terrell, #2124-49
James R. A. Dawson, # 20086-49
Melissa A. Macchia, #29920-49
Erica M. Knear, #35028-53
Taft Stettinius & Hollister LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204
(317) 713-3500 – telephone
(317) 713-3699 – fax
mterrell@taftlaw.com
jdawson@taftlaw.com

27358983.1

mmacchia@taftlaw.com
eknear@taftlaw.com

*Counsel for Defendants*

27358983.1