UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROBERT MULLIGAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:19-cv-01834-TWP-MPB |
| ) | |
| INDIANA UNIVERSITY BOARD OF TRUSTEES, ) | |
| KATHRYN CRUZ-URIBE in her official and ) | |
| individual capacities, and MICHELLE MALOTT in ) | |
| her official and individual capacities, ) | |
| ) | |
| Defendants. ) | |

**ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on cross Motions for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Plaintiff Robert Mulligan ("Mulligan"), (Filing No. 39), and by Defendants Indiana University Board of Trustees ("IU"), Kathryn Cruz-Uribe ("Cruz-Uribe"), and Michelle Malott ("Malott") (collectively, "Defendants",) (Filing No. 44). Mulligan initiated this action against the Defendants "for violating his Fourteenth Amendment due process rights pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("Section 1983"), and for Breach of Contract against IU under Indiana common law" after he was removed as Dean of the School of Business and Economics ("SoBE") at Indiana University East ("IU East"), (Filing No. 1 at 1). For the following reasons, the Court **grants** Defendants' Cross-Motion for Summary Judgment and **denies** Mulligan's Motion for Summary Judgment.

### I.   BACKGROUND

On July 1, 2016, Mulligan started his appointment at IU East both as Professor of Economics and as Dean of SoBE. (Filing No. 41-3 at 5.) According to the letter appointing him to the positions (the "Appointment Letter"), Mulligan was to be paid $119,000.00 for his work as

professor and $21,000.00 for his work as Dean for the 2016–2017 fiscal year. (Filing No. 41-2 at 2.) Notably, the Appointment Letter indicated that "[s]hould at some point in the future [he] no longer serve[s] in the position of dean and return to a faculty position, [his] salary would be prorated to a standard ten (10) month faculty appointment." *Id.* Nearly a year later, on July 29, 2017, IU provided Mulligan with a letter (the "2017 Salary Letter") indicating that his salary would increase to $142,800.00 for the 2017–2018 academic year. (Filing No. 41-4 at 2.) This 2017 Salary Letter also included a noteworthy proviso, disclaiming that it did "not constitute a contract" and was "for information only." *Id.*

In both of his positions, Mulligan reported to Malott, the Executive Vice Chancellor of Academic Affairs. During his time as Dean, Mulligan regularly met with Malott—who, oversaw all units providing academic instruction—to discuss his performance (Filing No. 41-3 at 7; Filing No. 41-1 at 4). From Spring 2017 to Fall 2017, several faculty members of the SoBE complained about Mulligan's leadership; specifically, one faculty member contended that Mulligan discriminated against her because of her pregnancy and three faculty members complained about Mulligan's handling of a confrontation between a female and male faculty member at a meeting in August 2017, (Filing No. 41-3 at 7–9; Filing No. 41-1 at 9–10). As a result of these complaints, IU East opened Title IX investigations into Mulligan's leadership. (Filing No. 41-1 at 13.) As part of the probe, IU East's Office of Human Resources and Office of Affirmative Action interviewed Mulligan and six other faculty members concerning the complaints. (Filing No. 46-6 at 2.)

The interviewed faculty largely expressed concern about Mulligan's leadership abilities, underscoring his "lack of leadership/professionalism," "lack of collaboration with faculty," "lack of communication," and "possible implicit bias towards women." *Id.* Indeed, two male faculty members reported that they felt women were not being treated well at the Mulligan-led SoBE.

(Filing No. 41-1 at 11.) Independent of these issues, three faculty members on a search committee for Dean of the School of Humanities and Social Sciences—a committee chaired by Mulligan—complained that he lacked the necessary communication and leadership skills to successfully direct that pursuit (Filing No. 46-4 at 16).

In August and September 2017, Malott discussed with Mulligan the complaints about his leadership, focusing on how he could improve for the future. *Id.* at 14-15. But as the Fall 2017 semester progressed, and Mulligan showed no signs of course correcting, Malott decided to remove him as Dean. *Id.* at 20, 27.

Malott talked with Cruz-Uribe, the Chancellor of IU East, regarding her decision to remove Mulligan as dean; and Cruz-Uribe supported her decision. *Id.* at 22. Thereafter, in December 2017, Malott informed Mulligan that he would be removed as Dean. *Id.* Mulligan's appointment as Dean ended on February 11, 2018, and he continued on as a tenured professor at IU East. (Filing No. 41-3 at 5; Filing No. 46-9 at 2.)

On July 30, 2018, Mulligan filed a complaint making a formal grievance concerning his removal with the IU East Faculty Board of Review ("FBR") (Filing No. 46-12 at 2). In his complaint, Mulligan alleged that Malott denied him an opportunity to respond or take corrective actions. To redress the grievance, he requested among other things; expungement of any defamatory material in his 2017 evaluation, a finding that his dismissal was improper and unjustified, and a "salary adjustment, sabbatical and/or change in job title, in lieu of compensatory and punitive damages." *Id.* at 5. Ultimately, however, the FBR determined, after reviewing grievance and university policies, that Mulligan's desired remedy was "not possible to achieve." (Filing No. 46-14 at 2.) Mulligan then initiated this lawsuit (*see generally* Filing No. 1), with the parties correspondingly moving for summary judgment (Filing No. 39; Filing No. 44).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). Finally, "neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

These tenets apply equally where, as here, opposing parties each move for summary judgment in their favor pursuant to Rule 56. *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774 (7th Cir. 1996). Indeed, the existence of cross-motions for summary judgment does not necessarily mean that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., Inc. v. Int'l Union of Operating Eng'rs.*, 335 F.3d 643, 647 (7th Cir. 2003). Rather, the process of taking the facts in

4

the light most favorable to the nonmovant, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Ins.*, 246 F.3d 975, 983 (7th Cir. 2001) (quoting *Hendricks–Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

### III. DISCUSSION

In his Complaint, Mulligan brings two claims: Count I: Violations Of Fourteenth Amendment Procedural Due Process Rights By Defendants Cruz-Uribe and Malott; and Count II: Breach of Contract by IU. ([Filing No. 1 at 4](), 5.) He contends that he is entitled to summary judgment because "undisputed facts and designated evidence show that [he] had an employment contract with IU, the University breached that contract, and he suffered damages as a result" and that he "had a property interest in his continued employment as dean by virtue of his employment contract and . . . was not provided notice or an opportunity to be heard before being removed as dean." ([Filing No. 39 at 1]().) For their part, Defendants argue that they are entitled to summary judgment because sovereign and qualified immunity shield them from the claims. ([Filing No. 45 at 12-16]().) Defendants further contend that even if the claims are not barred on immunity grounds, Mulligan's breach of contract claim fails because he was never awarded an employment contract for a definite term and he "served at the pleasure of IU", *id*. at 19. Defendants contend the Due Process claim fails because Mulligan had no protectable interest in his continued employment, he was afforded all the process due to him, and he had no protected right in enforcing IU's procedures. *Id*. at 17–28. The Court will first address Defendants' Motion, before turning to Mulligan's Motion.

5

### A. Eleventh Amendment Immunity

Defendants argue that "Mulligan cannot pursue any of his claims against [IU] due to Eleventh Amendment sovereign immunity." (Filing No. 45 at 13.) The Eleventh Amendment precludes a citizen from suing a state or a state agency in federal court without the state's consent or congressional abrogation. *See Peirick v. Indiana University–Purdue University Indianapolis Athletic Department*, 510 F.3d 681, 695 (7th Cir. 2007). The Seventh Circuit has already conclusively established "that the Board of Trustees of Indiana University"—"IU" here—"is but an agency of the state, which operates the school under state oversight." *Id.* at 696. Though Mulligan acknowledges this fact, he contends that IU "did not seek to have this immunity question resolved at the earliest possible stage – it did not file a motion to dismiss during the initial pleading stage, instead pleading its Eleventh Amendment protection as an affirmative defense to this lawsuit in its Answer". (Filing No. 49 at 6.) "By failing to assert its immunity at the earliest possible stage," Mulligan contends that IU "has consented to suit in this Court and the case should move forward." *Id.* Defendants argue that Mulligan is mistaken, noting that *Hunter v. Bryant*, 502 U.S. 224, 228–29 (1991), held "that defendants were entitled to qualified immunity *at the summary judgment stage* and thus had not waived immunity by not moving to dismiss." (emphasis Defendants').

The Court agrees with Defendants. The Eleventh Amendment declares a policy and sets forth an explicit limitation on federal judicial power of such compelling force that this Court will consider the issue arising under this Amendment in this case even though urged for the first time in this Court. *See McDonough Associates, Inc. v. Grunloh*, 722 F.3d 1043, 1049 (7th Cir. 2013), ("[T]he general rule is that private individuals are unable to sue a state in federal court absent the state's consent."). Because IU is a state entity, and since it has not consented to being sued in federal court or otherwise waived sovereign immunity, any claim against it is barred by the

Eleventh Amendment. *Ford Motor Co. v. Dep't of Treasury of Indiana*, 323 U.S. 459, 467 (1945), *overruled on other grounds by Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613 (2002). ("[T]he general rule is that private individuals are unable to sue a state in federal court absent the state's consent."). This forecloses Count II: the breach of contract claim in its entirety. Mulligan's Complaint alleges that he "and *IU* entered in a Contract whereby *IU* agreed to employ Mulligan as Dean of the School of Business and Economics at IU East and a tenured Full Professor of the fiscal year 2017–2018." (Filing No. 1 at 5 (emphases added).) In other words, Mulligan contends that only "*IU* breached the contract . . . when it demoted him from the position of Dean … prior to the expiration of the Contract term resulting in a substantial reduction of Mulligan's salary." *Id.* (Emphasis added). Because Defendants Cruz-Uribe and Malott are absent from the claim, and IU—an undisputed arm of the state—is the only Defendant implicated in the count, Defendants' Cross-Motion for Summary Judgment as it relates the breach of contract claim is **granted** on the grounds of Eleventh Amendment sovereign immunity, and Mulligan's Motion for Summary Judgment as to that claim is **denied** for the same reason.[1]

Things get a bit trickier when applying the doctrine to Count I: the Due Process claim. Mulligan's Complaint only names Cruz-Uribe and Malott as purportedly responsible for this constitutional violation, (*see* Filing No. 1 at 4), Mulligan sues both Cruz-Uribe and Malott in their

---

[1] In his brief responding to Defendants' Motion for Summary Judgment, Mulligan suggests that the Court, if it finds the breach of contract claim barred by the Eleventh Amendment, should dismiss it "without prejudice so that he may pursue it in state court." (Filing No. 49 at 17.) Dismissal of a plaintiff's action without prejudice under Rule 41(a)(2) is within the sound discretion of the district court's determination of whether the defendant will suffer "plain legal prejudice" because of the dismissal. *Federal Deposit Ins. Corp. v. Knostman*, 966 F.2d 1133, 1142 (7th Cir. 1992). Certain factors to consider in determining whether a defendant will suffer "plain legal prejudice" are the "defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and the fact that a motion for summary judgment has been filed by the defendant." *Id.* Here, the Court determines that Defendants would face plain legal prejudice if the claim were dismissed without prejudice because, as they summarize, "[t]he parties have been litigating this case for well over a year. Discovery is complete, final witness and exhibits lists have been filed, and trial [had] been set for January 2021. Further, all parties have moved for summary judgment on the breach of contract claim itself." (Filing No. 54 at 5.)

"official and individual capacities." *Id.* at 1. Defendants argue that sovereign "immunity also extends to individuals 'being sued in their official capacities,'" with one notable exception regarding prospective injunctive relief (Filing No. 45 at 14 (citing *Shannon v. Bepko*, 684 F. Supp. 1465, 1473–74 (S.D. Ind. 1988)) (quotation mark omitted)).  A plaintiff may [only] sue individual state officials for 'prospective injunctive relief to protect the plaintiff against any further or ongoing violation of his federal rights, *id.* (quoting *Bissessur v. Ind. Univ. Bd. of Trs.*, No. 1:07-CV-1290, SEB-WTL, 2008 WL 4274451, *3 (S.D. Ind. Sept. 10, 2008)). Defendants argue that all of Mulligan's claims against Cruz-Uribe and Malott in their official capacities are barred, because claims "for any relief *other than prospective injunctive relief* are barred," *id.* (emphasis added).

Mulligan agrees with Defendants that a plaintiff can only "pursue a claim against a state officer for ongoing violations of federal law by naming him or her as a defendant in his or her official capacity." (Filing No. 49 at 6 (citing *Ex Parte Young*, 209 U.S. 123, 127–132 (1908)).) Mulligan notes that this represents an "exception to the doctrine" and limits claims to "prospective injunctive relief."  *Id.* But because the relief he seeks—"reinstatement of his employment contract," "a hearing in front of the faculty board of review concerning his removal," and "his amended performance evaluation with additional, derogatory comments be withdrawn"—from these Defendants is purely prospective, "Cruz-Uribe and Malott are not entitled to sovereign immunity in their official capacities." *Id.* at 7–8.

Defendants respond that any prospective relief in this case is foreclosed:  "Cruz-Uribe and [ ] Malott are not capable of reinstating [ ] Mulligan to a position that even he agrees he was not entitled to beyond the 2017–18 fiscal year." (Filing No. 54 at 11.) In other words, because the contract only provided, at the latest, that Mulligan would serve as dean through the close of the 207–2018 fiscal year, "this Court cannot grant judgment to [him] re-instating him as dean now."

8

*Id.* Because "no prospective relief against [ ] Cruz-Uribe and [ ] Malott can be granted", Defendants maintain that they are entitled to summary judgment on the Due Process claim. *Id.* Additionally, Mulligan's Complaint did not limit relief sought from these Defendants to that of a prospective nature: he also asks the Court to order Cruz-Uribe and Malott to pay him lost wages and other damages. *Id.* at 10 (quoting Filing No. 1 at 6). The Court agrees with the parties that Mulligan can only bring a Due Process claim against Cruz-Uribe and Malott for prospective injunctive relief. That, of course, means that Mulligan's request for "lost wages and other damages" is barred under the Eleventh Amendment. *See Council 31 of the Am. Fed'n of State, County & Mun. Emples. v. Quinn*, 680 F.3d 875, 884 (7th Cir. 2012) (barring claim under Eleventh Amendment when it "would force the defendants, acting in their official capacities, to extract funds from the State's treasury for the ultimate benefit of the plaintiffs).

The Court does not agree with Defendants, however, that it can provide no prospective injunctive relief because any purported "right" to the position has lapsed. The Seventh Circuit has held that "reinstatement and expungement of personnel records[ ] is clearly prospective in effect and thus falls outside the prohibitions of the Eleventh Amendment." *Elliott v. Hinds*, 786 F.2d 298, 302 (7th Cir. 1986). The Seventh Circuit has held that the "goal of reinstatement and the removal of damaging information from the plaintiffs work record is not compensatory…rather, it is to compel the state official to cease her actions in violation of federal law and to comply with constitutional requirements." *Id.* And in fact, Judge John D. Tinder, while a judge on this Court, determined that a "plaintiff request[ing] reinstatement of his employment contract"—even when that contract had already "expired by its own terms"—was seeking relief that was "clearly prospective in effect." *Grosz v. State of Ind.*, 730 F. Supp. 1474, 1478, 1481 n.7 (S.D. Ind. 1990); *cf. Hostrop v. Board of Junior College District Number 515*, 523 F.2d 569 (7th Cir. 1975) (holding

9

that "injunctive relief would be manifestly inappropriate" after "[f]ive years have elapsed since plaintiff's employment was terminated" when a money judgment was *not precluded* by the Eleventh Amendment because the state had waived any immunity), *cert. denied*.

Accordingly, Mulligan's request for prospective relief from Cruz-Uribe and Malott in their official capacities is not barred by the Eleventh Amendment. *See Kashani v. Purdue Univ.*, 813 F.2d 843, 848 (7th Cir. 1987) ("[a]lthough the Eleventh Amendment bars all claims against Purdue and the damages claims against its officials in their official capacities, it does not thwart the claims against the officials in their official capacities for the injunctive relief of reinstatement.").

Defendants also argue that any claims for monetary damages against Cruz-Uribe and Malott "in their individual capacities" are barred by sovereign immunity because his claim is not a "bona fide individual capacity suit." (Filing No. 45 at 14, 15.) Defendants contend that claims are not bona fide individual capacity suits if "(1) the claims arise from the individuals' conduct in their official capacities as employees of an arm of the state, (2) the individuals would not be facing plaintiff's allegations if they were not supervisors, and (3) their actions were undertaken in their official capacities as supervisors." *Id.* at 14–15 (citing *Wade v. Indiana University School of Med.*, No. 1:16-cv-02256-TWP-MJD, 2019 WL 3067519, *8, *8 n.1 (S.D. Ind. July 12, 2019)). Defendants contend "Mulligan has not alleged a single claim against either [ ] Cruz-Uribe or [ ] Malott for conduct taken by either of them individually as a person, separate and distinct from their roles as an administrator at IUE." *Id*. at 15. Instead, Defendants argue, he has asserted a claim against them "in their official capacities (as opposed to their individual capacities)," and "all claims for money damages against them . . . are barred by the Eleventh Amendment." *Id.*

> Mulligan contends that he brings a bona fide individual capacity suit because
>
> 'to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right

10

> and the Eleventh Amendment provides no shield for a state official confronted by a claim that [she has] deprived another of a federal right under color of state law.'

(Filing No. 49 at 8 (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)) (emphasis Mulligan's). He argues that he alleges that Cruz-Uribe and Malott, "while acting under color of state law, deprived him of his federal right to due process under the Fourteen Amendment." *Id.* at 9. Mulligan contends these Defendants "acted outside the scope of their employment when they failed to give him due process under the University's policies and procedures, instead abruptly removing him from the dean's position without notice or hearing and later creating a false and defamatory performance evaluation to justify the removal." *Id.* Though Defendants maintain "that the 'duties implicated in [ ] Mulligan's claim—to follow applicable rules and procedures and conduct annual evaluations—arise directly out of [ ] Cruz-Uribe's and [ ] Malott's administrative roles at IUE,'" that argument "'has been rejected by this circuit.'" *Id.* (quoting Filing No. 45 at 15; *Isabell v. Trustees of Indiana University*, 432 F. Supp. 3d 786, 795 (N.D. Ind. 2020)). Moreover, Mulligan notes that he "asked that the Court '[o]rder Defendants Cruz-Uribe and Malott to pay lost wages and other damages to Mulligan' in his Complaint, but properly did not seek these damages from IU." *Id.* at 10 (quoting Filing No. 1 at 6). Though IU "*may* indemnify Cruz-Uribe and Malott," the Court should not, Mulligan argues, blindly presume that fact at the summary judgment stage. *Id.* (citing *Isabell*, 432 F. Supp. 3d at 795).

Defendants reply that "Mulligan has not alleged a single claim against either [ ] Cruz-Uribe or [ ] Malott for conduct taken by either of them individually as a person, separate and distinct from their roles as administrators". (Filing No. 54 at 11.) And despite Mulligan's argument to the contrary, "any monetary damages against [ ] Cruz-Uribe and [ ] Malott for Section 1983 violations would flow from the state treasury because [ ] Mulligan is asking the Court to order 'Defendants Cruz-Uribe and Malott to pay lost wages and other damages to Mulligan' as part of his alleged

11

employment contract." *Id.* at 13 (quoting Filing No. 1 at 6). In other words, any "judgment would inescapably be paid by the state since the alleged employment contract was only between … [IU] and [ ] Mulligan, and [ ] Cruz-Uribe and [ ] Malott were not parties to the alleged contract in their individual capacities." *Id.* Finally, reliance on *Isabell* is misplaced when the claim in that case "did not involve an employment contract." *Id.* at 13 n.6.

The Defendants' argument is persuasive. The holdings in *Omosegbon v. Wells*, 335 F.3d 668 (7th Cir. 2003), and in *Haynes v. Indiana University*, 902 F.3d 724 (7th Cir. 2018), conclusively establish that the Eleventh Amendment bars any monetary claims against Cruz-Uribe and Malott in their individual capacities. In *Omosegbon*, the Seventh Circuit held that, after a professor's contract was not renewed, his monetary claims against IU administrators

> allegedly in their individual capacity [failed] . . . because he seeks backpay and other forms of monetary compensation based on an employment contract[.] We think it so inescapable that any resulting judgment will be paid by the state rather than the individual defendants that this bears no resemblance to a bona fide individual capacity suit. (The individuals, after all, were not even parties to the contract in their individual capacity.) Accordingly, he has no § 1983 claim against these defendants.

335 F.3d at 673. In *Haynes*, that court, comparing the case to *Omosegbon*, again held that because it had "no reason to believe" that IU administrators—rather than IU itself—"would foot the bill for a resulting judgment" from a tenure-denial case, sovereign immunity defeated the professor's monetary "damages action against the [IU] administrators, both in their individual and official capacities." 902 F.3d at 732. Because any "backpay [or] other form[ ] of monetary compensation based on an employment contract" would be paid by the state rather than these individual

Defendants, *see Omosegbon*, 355 F.3d at 673, the Eleventh Amendment bars the claim for monetary damages against Cruz-Uribe and Malott in their individual capacities as well.[2]

In sum, the Eleventh Amendment bars all claims brought by Mulligan except for his request for prospective relief from Cruz-Uribe and Malott under his Due Process claim. The Court will now turn to that claim.

### B.     Purported Violations of Fourteenth Amendment Procedural Due Process Rights by Defendants Cruz-Uribe & Malott

Under the Fourteenth Amendment, the Due Process clause "forbids a state to deprive any person of 'life, liberty, or property, without due process of law.'" *Dupuy v. Samuels*, 397 F.3d 493, 503 (7th Cir. 2005) (citing U.S. Const. amend. XIV, § 1). "Procedural due process claims require a two-step analysis. The first step requires [a court] to determine whether the plaintiff has been deprived of a protected interest; the second requires a determination of what process is due." *Townsend v. Vallas*, 256 F.3d 661, 673 (7th Cir. 2001) (quoting *Strasburger v. Board of Educ., Hardin County Cmty. Unit Sch. Dist. No. 1*, 143 F.3d 351, 358 (7th Cir. 1998)). Mulligan alleges that he had both a "property interest" and a "liberty interest" in his "continued employment as the Dean." (Filing No. 1 at 4.) According to his Complaint, Cruz-Uribe and Malott, by failing to afford him "with due process," interfered with these interests, violating the Fourteenth Amendment. *Id.* In any due process case where the deprivation of property is alleged, the threshold question is whether a protected property interest actually exists. *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 904 (7th Cir. 2011) (citation omitted). The Court will first resolve this issue before, if necessary, turning to the second inquiry.

---

[2] Because the Court holds that the claims for monetary damages against Cruz-Uribe and Malott in both their official and individual capacities are barred by the Eleventh Amendment, it need not resolve whether these "Defendants sued in their individual capacities are entitled to *qualified immunity* from [ ] Mulligan's due process claims for money damages." (Filing No. 45 at 16 (emphasis added).)

Government employees have a property interest in their employment when they have a legitimate claim of entitlement, usually arising by statute or contract. *Lalvani v. Cook Cnty.*, 269 F.3d 785, 791 (7th Cir. 2001). While public employees who serve only "at will" or at the pleasure of their employers may have a desire in continued employment, they generally do not have a property interest in their positions. *Id.* On the other hand, a government employee's liberty interests, in this Due Process context, are implicated when the government, terminating the employee, "make[s] any charge against him that might seriously damage his standing and associations in the community" or "impose[s] on him a stigma or other disability that foreclose[s] his freedom to take advantage of other employment opportunities." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 573 (1972). In other words, "[a] claim that a government employer has infringed an employee's liberty to pursue his occupation requires: (1) he was stigmatized by the employer's actions; (2) the stigmatizing information was publicly disclosed; and (3) he suffered a tangible loss of other employment opportunities as a result of the public disclosure." *Dupuy*, 397 F.3d 493 at 509 (citing *McMath v. City of Gary, Indiana*, 976 F.2d 1026, 1031 (7th Cir.1992)).

In his Complaint, Mulligan alleged as "Dean of the School of Business and Economics and a tenured Full Professor, Mulligan had both protectable property and liberty interests in his continued employment in those roles." (Filing No. 1 at 3.) However, in his summary judgment brief, he contends only that he had a property interest "to his dean position through the end of the 2017–2018 fiscal year[] because he had an employment contract that noted his salary through the end of the fiscal year." (Filing No. 40 at 17.) Defendants maintain that Mulligan had neither a property nor a liberty interest in his position. (Filing No. 45 at 21–22). First, Defendants contend that "Mulligan was removed only from his administrative role as dean" and "remains employed by the University as a tenured faculty member." *Id.* at 22. Because "deans serve at the pleasure of

14

the University," Mulligan was an at-will employee with no protected property interest in continued employment as a dean. *Id.* (citing *Moulton v. Vigo Cnty.*, 150 F.3d 801, 804 (7th Cir. 1998)).

As for liberty interest—"[t]o the extent [he] has not otherwise dispensed with" the allegation—"Mulligan admitted that his removal as dean was never publicly disclosed by Defendants," and he has "retained his employment as a tenured professor." *Id.* at 22, 23. And "to the extent that Dr. Mulligan is alleging that his 2017 annual evaluation constitutes public disclosure, his evaluation was not publicly disclosed by the University, but only given to Dr. Mulligan himself." *Id.* at 23. Although Mulligan does not directly respond to this argument, Defendants reiterate that "[w]ithout a contract for the deanship during the time Dr. Mulligan was removed as dean, Dr. Mulligan served as dean at will and had no protectable property interest." ([Filing No. 54 at 2](#).) Moreover, Defendants note that "[a]lthough Dr. Mulligan asserted in his Complaint that Defendants interfered with his liberty interests by failing to afford him due process, he fails to make such an argument in both his opening brief and his response." *Id.* at 16 n.8.

The Court agrees with the Defendants that Mulligan has abandoned any contention that he has a liberty-based Due Process claim. Outside of the passing reference in his Complaint, he does not, as Defendants note, argue elsewhere that any publicly disclosed stigmatizing actions or statements by Cruz-Uribe or Malott led to him suffering tangible loss of other employment opportunities. *See Dupuy*, 397 F.3d 493 at 509. Instead, the claim turns on whether Mulligan had a contractual right to the deanship that created a Due Process property interest in the position.

The Court agrees with Defendants that the undisputed evidence demonstrates that Mulligan had no property interest to the deanship because he had no contractual right to remain in the role. "Indiana law requires a contract of employment to contain four terms: 1) the place of employment; 2) the period of employment; 3) the nature of the service the employee is to render; and 4) the

15

compensation the employee is to receive." *Jones v. Gen. Elec. Co.*, 87 F.3d 209, 213 (7th Cir. 1996) (citing *Majd Pour v. Basic Am. Medical, Inc.*, 512 N.E.2d 435, 439 (Ind. Ct. App. 1987)). The parties rightfully quibble over the second element: the existence of any term of employment. Mulligan's Appointment Letter established his "salary for the fiscal year 2016–2017" as "Dean *and tenured Full Professor of Economics*," breaking out the pay for each position into component parts (Filing No. 46-3 at 2 (emphasis added) (denoting that Mulligan's salary "will be $119,000 with an additional $21,000 for administrative duties for a total of $140,000").) This letter unambiguously designated Mulligan to two positions and indicated that, "[s]hould at some point in the future you no longer serve in the position of Dean and return to a faculty position, your salary would be prorated to a standard ten (10) month faculty appointment." *Id.* This initial letter, then, clearly contemplated the duality of Mulligan's appointment, specifically directing that—even if he no longer served as dean, no matter the reason for the change—he would still retain a tenured faculty position (*see* Filing No. 46-4 at 29 ("It can be difficult to attract an administrator to a position if they don't have faculty position to fall back on.")). And although the 2017 Salary Letter indicated that his salary would increase "for the fiscal year 2017–18," it conspicuously disclaimed, set off from all other text, that it did "not constitute a contract" and that it was "for information only." (Filing No. 46-5 at 2.) Instead of creating a contract, both these documents merely represent the fact that "[s]tating compensation and other benefits in annual terms is both common and convenient, but does not necessarily mean that the employment is for a definite period of one year." *Bee Window, Inc. v. Turman*, 716 N.E.2d 498, 501 (Ind. Ct. App. 1999); *see also Butts v. Oce-USA, Inc.*, 9 F. Supp. 2d 1007, 1011 (S.D. Ind. 1998) ("Salaries are typically measured in annual terms and doing so does not eliminate an employee's at-will status.").

Because the Court concludes, as a matter of law, that Mulligan did not have a constitutionally protected property interest in this case since he had no contractual right to the deanship position, it need not consider Mulligan's additional arguments regarding the denial of his Due Process rights. Defendants are entitled to summary judgment on this claim.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Mulligan's Motion for Summary Judgment ([Filing No. 39](#)), and **GRANTS** Defendants' Cross-Motion for Summary Judgment ([Filing No. 44](#)). Mulligan's claims are **dismissed**, and Final Judgment will issue under separate order.

**SO ORDERED.**

Date: 3/31/2021

_____
Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Eric J. Hartz
CLEVELAND LEHNER CASSIDY
eric@clcattorneys.com

Meghan Uzzi Lehner
CLEVELAND LEHNER CASSIDY
meghan@clcattorneys.com

James R. A. Dawson
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
jdawson@taftlaw.com

Erica Marie Knear
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
eknear@taftlaw.com

Melissa A. Macchia
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
mmacchia@taftlaw.com

Michael C. Terrell
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
mterrell@taftlaw.com